IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 24-177-2 |
| EDWIN VASQUEZ | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

Defendant Edwin Vasquez faces sentencing for his participation in a drug trafficking operation that involved his possession and distribution of significant quantities of deadly controlled substances, including fentanyl and methamphetamine, which had a detrimental impact on the communities in this District. On February 9, 2026, Vasquez pleaded guilty to multiple counts of distribution and possession with intent to distribute controlled substances, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A), and related charges in connection with his role in this drug trafficking organization. He faces a mandatory minimum of 15 years of imprisonment and an advisory Sentencing Guidelines range of 360 months to life imprisonment, due in part to his status as a career offender. In this case, the defendant and the government entered into a plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), in which the parties agreed to recommend a sentence between 180 and 216 months of imprisonment. Based on the defendant's criminal conduct in this case, as well as the Section 3553(a) sentencing factors, the Government respectfully recommends a sentence at the high-end of the C-Plea range, or 216

1

months' imprisonment. While still below the advisory Sentencing Guidelines range, such a sentence would adequately account for the defendant's criminality, as well as his acceptance of responsibility and the lack of any prior significant terms of imprisonment.

For these reasons, as well as those in the Government's Sealed Supplement to its Sentencing Memorandum, the government respectfully requests the Court impose a sentence at the high end of the C-plea range, or 216 months' imprisonment.

## I.    BACKGROUND

### A.    Summary

The defendant, Edwin Vasquez, stands convicted of Counts 1, 2, 3, 5, 6, 7, 10, 11, 12, and 17, of the Amended Indictment,[1] charging him with: conspiracy to distribute and possession with intent to distribute 50 grams or more of methamphetamine and 400 grams or more of fentanyl, in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(A)) (Count 1); distribution of 50 grams or more of methamphetamine, and aiding and abetting, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A), and 18 U.S.C. § 2 (Counts 2, 3, and 5); distribution of fentanyl, and aiding and abetting, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), and 18 U.S.C. § 2 (Count 6); distribution of 50 grams or more of methamphetamine, and fentanyl, and aiding and abetting, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A), (b)(1)(C), and 18 U.S.C. § 2 (Count 7); possession

---

[1] Defendant was charged with two additional counts in the Amended Indictment, Counts 8 and 9, which are lesser-included offenses of Counts 11 and 12, respectively, and merge for purposes of sentencing; therefore, the government will move to dismiss Counts 8 and 9 at the time of sentencing.

with intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A) (Count 10); possession with intent to distribute 5 grams or more of methamphetamine, and fentanyl, within 1,000 feet of a school in violation of 21 U.S.C. §§ 860 and 841(a)(1), (b)(1)(B), (b)(1)(C) (Count 11); possession with intent to distribute 400 grams or more of fentanyl within 1,000 feet of a school in violation of 21 U.S.C. §§ 860 and 841(a)(1), (b)(1)(A) (Count 12); and maintaining a drug house in violation of 21 U.S.C. § 856(a)(2) (Count 17).

The government filed an information noticing the defendant's prior conviction for a serious drug felony, that is, a conviction on or about November 8, 2019, in the Commonwealth of Pennsylvania for manufacture, delivery, or possession with intent to manufacture or deliver, in violation of 35 Pa. C.S.A. 780-113(a)(3), for which he served more than 12 months of imprisonment and for which he was released from serving any term of imprisonment related to that offense within 15 years of the commencement of the instant offense.

**B.     The Defendant's Illegal Drug Trafficking**

The facts of this case and the investigation are succinctly and adequately summarized in the Presentence Investigation Report ("PSR") at Paragraphs 16 through 30. In short, in July 2023, law enforcement learned that Vasquez's co-defendant and nephew, Alberto Cintron, was the leader of a drug trafficking group ("DTG") distributing methamphetamine and fentanyl in the Montgomery County, Chester County and Philadelphia areas. Law enforcement utilized a confidential human source ("CHS") and then an undercover Pennsylvania state trooper ("UC") to

conduct numerous controlled purchases of methamphetamine and fentanyl either directly or indirectly from Cintron (referred to as "Bert" or "Nephew") and his close associate and co-conspirator, defendant Vasquez (referred to as "Unc"). *See* PSR ¶ 25 (chart detailing all of the charged controlled purchases). Leading up to each transaction, the CHS or UC contacted the defendant and/or Cintron by telephone to request a quantity of drugs and discuss pricing. On each date, either the defendant or Cintron sold narcotics to the CHS or UC. As confirmed by lab analyses, these substances included at least 50 grams of methamphetamine (on August 23, 2023, September 15, 2023, October 8, 2023 and October 20, 2023), and/or fentanyl mixed with xylazine (October 13, 2023 and October 20, 2023).

The investigation eventually led law enforcement to intercept communications over Vasquez's and other co-conspirators' telephones pursuant to a court-authorized Pennsylvania state wiretap. Through the use of intercepted communications, coupled with physical surveillance, investigators were able to gain a true understanding of how the DTG operated. The investigation revealed a common pattern or method of conducting business, namely, contact would be made between the CHS, the UC, or a sub-dealer (intercepted on the wire) with either Cintron or Vasquez. Cintron would either direct his associate, Vasquez, to actually deliver the drugs to the customer, or Cintron would deliver the controlled substances himself. It was apparent from these communications and interactions that Cintron was the one running the operation and giving direction to his uncle, Vasquez. At a minimum, the two were jointly responsible for distribution of these bulk quantities of drugs to sub-dealers, who would then further re-distribute drugs down the chain to eventually reach the end-users of the drugs.

From in or about July 2023 through October 2023, the Cintron DTG distributed, or possessed with the intent to distribute, more than 5 kilograms of methamphetamine, more than 1,000 grams of fentanyl, and other controlled substances. At the Change of Plea hearing, the defendant admitted that at least 5,587 grams of methamphetamine (mixture), which includes 5,077 grams of methamphetamine actual or ice, and 1,297 grams of fentanyl were distributed by him, possessed by him with the intent to distribute, or were attributable and reasonably foreseeable to him pursuant to an agreement or conspiracy with Alberto Cintron, Adrian DeJesus (a fentanyl supplier), and others, to distribute controlled substances.

Defendant Vasquez and his co-defendant Alberto Cintron distributed quantities of methamphetamine, fentanyl, and other controlled substances to multiple sub-dealers who redistributed the controlled substances to others in and around the Eastern District of Pennsylvania. Four of these sub-dealers are referenced in the Amended Indictment, with details of intercepted conversations and meetings between them and Vasquez also detailed as overt acts of the charged conspiracy. The defendant often coordinated the orders and deliveries and met with the sub-dealer himself. Each sub-dealer paid the defendant and Cintron in exchange for delivery of controlled substances.

The defendant stored drugs at different locations, either at a residence he shared with Cintron, located at 6032 Torresdale Avenue, Philadelphia, PA, or at stash locations. The fentanyl stash location was maintained at 5100 Walker Street, Philadelphia, PA. The methamphetamine stash location was maintained at 2503 N. 20th Street, Philadelphia, PA. Associates of the Cintron

DTG were utilized at each location as a point of contact and who were charged with maintaining security at the residence to protect the stash of controlled substances. The defendant had knowledge of and exercised control over all three of these locations for purposes of storing controlled substances.

The Cintron DTG also utilized processing centers to package controlled substances, specifically fentanyl, for distribution. These centers were located at 7419 Revere Street and 6731 Akron Street in Philadelphia, PA.

Multiple search warrants were executed on October 27, 2023, at residences and stash locations associated with the defendant and this DTG.

At the defendant's residence, 6032 Torresdale Avenue, Philadelphia, law enforcement seized approximately 20.42 grams of methamphetamine, and approximately 10 bundles, or 7.895 grams, of fentanyl mixed with xylazine. Additional methamphetamine was recovered in the toilet after someone attempted to flush the drugs prior to discovery by law enforcement. Law enforcement also seized a Glock Model 43x 9mm semi-automatic pistol, bearing serial number BPHM467, loaded with one bullet in the chamber and 10 bullets in the magazine that was in Cintron's bedroom, in a drawer containing his clothing.

At the fentanyl stash location, 5100 Walker Street, Philadelphia, law enforcement seized approximately *5,547 bags of fentanyl* packaged in approximately 35-40 racks, each containing 10 bundles of fentanyl; the racks were stamped "CARDI B," "BANSHEE," "BAD BUNNY" and "FIREBALL."

At the methamphetamine stash location, 2503 N. 20th Street, Philadelphia, law enforcement seized approximately *7 pounds of methamphetamine*. Lab results confirmed the methamphetamine weighed approximately 3,06.8 grams, with a purity of 88%. In the same bedroom, law enforcement seized an AK 47 style rifle, a Century Arms semi-automatic rifle, model GP 1975 Sporter, caliber 7.62x39mm, bearing serial number Z003255, as well as additional ammunition including six upper receivers for assault rifles.

## II.    MANDATORY MINIMUM AND SENTENCING GUIDELINES CALCULATION

### A.    Statutory Maximum and Mandatory Minimum Sentence

The defendant is subject to increased punishment under Title 21, United States Code, Section 841(b), as a result of his prior conviction for a serious drug felony[2] and the Court may impose the following statutory maximum and mandatory minimum sentences: Count 1 (conspiracy to distribute and possess with intent to distribute controlled substances, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)), life imprisonment, a 10-year mandatory minimum term of imprisonment, a mandatory minimum 5 years of supervised release up to lifetime supervised release, a $10,000,000 fine, and a $100 special assessment; Counts 2, 3, 5, 7, and 10 (distribution/possession with intent to distribute controlled substances, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)), life imprisonment, a 15-year mandatory minimum term of imprisonment, a mandatory minimum 10 years of supervised release up to lifetime supervised release, a

---

[2] The Amended Indictment does not notice the defendant's prior conviction for a serious drug felony in Counts 1, 11, or 12; therefore, those counts are not subject to increased punishment under Title 21, United States Code, Section 841(b).

$20,000,000 fine, and a $100 special assessment; Count 6 (distribution of fentanyl, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C)), 30 years' imprisonment, a mandatory minimum 6 years of supervised release up to lifetime supervised release, a $2,000,000 fine, and a $100 special assessment; Count 11 (possession with intent to distribute controlled substances within 1,000 feet of a school, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B) and (b)(1)(C)), 80 years' imprisonment, a 5-year mandatory minimum term of imprisonment, a mandatory minimum 8 years of supervised release up to a lifetime supervised release, a $10,000,000 fine, and a $100 special assessment; Count 12 (possession with intent to distribute controlled substances within 1,000 feet of a school, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)), life imprisonment, a 10-year mandatory minimum, a mandatory minimum 10 years of supervised release up to a lifetime of supervised release, a $20,000,000 fine, and a $100 special assessment; and Count 17 (maintaining a drug house), 20 years' imprisonment, a $500,000 fine, and $100 special assessment.

Total Maximum and Mandatory Minimum Sentence is: life imprisonment, 15 years' mandatory minimum imprisonment, a mandatory minimum 10 years of supervised release up to a lifetime of supervised release, a $142,500,000 fine, and a $1,000 special assessment.

B.    **Sentencing Guidelines Calculation**

Pursuant to USSG § 3D1.2, the offenses underlying all Counts are grouped for guideline calculation purposes. The base offense level is 39 because the offense involved more than 90,000 kilograms of converted drug weight (level 38), increased by one level because some of the drugs

8

were delivered or possessed with intent to deliver within 1,000 feet of a protected location. PSR ¶ 40. There is a 2-level enhancement for the presence of firearms at various locations. *Id.* at ¶ 41. The adjusted offense level is 41, which is the applicable offense level because it is greater than the career offender offense level of 38. *See* id. at ¶¶ 45-46. The defendant accepted responsibility and assisted authorities with the prosecution of his own misconduct by timely notifying authorities of his intention to plead guilty, therefore the offense level is decreased by 3 levels, resulting in a total offense level of 38. *Id.* at ¶¶ 47-49.

The defendant has a criminal history score of 6, which would otherwise result in a criminal history category of III. *Id.* at ¶¶ 58-59. However, because the defendant has a prior conviction for drug trafficking and a prior felony conviction for a crime of violence (robbery), he is considered a career offender, and he is therefore a Criminal History Category VI. *Id.* at ¶ 60. Based upon a total offense level of 38 and a criminal history category of VI, the guideline imprisonment range is 360 months to life. *Id.* at ¶ 111.

## III.    CONSIDERATION OF THE 3553(a) FACTORS

The Supreme Court has declared, "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 128 S. Ct. 586, 596 (2007). Thus, the Sentencing Guidelines remain an indispensable resource for assuring appropriate and uniform punishment for federal criminal offenses.

The Court must consider all of the sentencing factors set forth in 18 U.S.C. § 3553(a), in

9

determining the appropriate sentence in this case. The Section 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).[3] Restitution is not an issue in this case.

As discussed below, in consideration of the defendant's conduct in this case and his history and characteristics, as well as the advisory Guidelines range, the Government respectfully recommends a sentence at the top of the C-plea range—and below the Guidelines range—of 216 months' imprisonment. While the defendant has demonstrated acceptance of responsibility and

---

[3] Further, the "parsimony provision" of Section 3553(a) states that "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." The Third Circuit has held that "district judges are not required by the parsimony provision to routinely state that the sentence imposed is the minimum sentence necessary to achieve the purposes set forth in § 3553(a)(2). . . . '[W]e do not think that the "not greater than necessary" language requires as a general matter that a judge, having explained why a sentence has been chosen, also explain why some lighter sentence is inadequate.'" *United States v. Dragon*, 471 F.3d 501, 506 (3d Cir. 2006) (quoting *United States v. Navedo-Concepcion*, 450 F.3d 54, 58 (1st Cir. 2006)).

there are mitigating factors including the age of many of his prior convictions and the fact that those prior convictions resulted in minimal terms of imprisonment, he also played an instrumental role in a large-scale drug trafficking organization, one responsible for distributing thousands of grams of dangerous narcotics in our area. He faces a mandatory minimum sentence of at least 15 years' imprisonment and, given the drug weight and firearms involved, begins with an adjusted offense level of 41. Accordingly, the Government recommends a sentence of 216 months as "sufficient, but not greater than necessary" to meet the objectives of the Section 3553(a) factors and as the appropriate sentence in this case. *See* 18 U.S.C. § 3553(a).

A. **The nature and circumstances of the offense and the history and characteristics of the defendant.**

The defendant was involved in a dangerous enterprise, literally peddling poison that kills people and destroys communities. This Court is all too familiar with the dangers of methamphetamine and especially fentanyl, as the social, economic, and health impacts in this district, and in the City of Philadelphia in particular, are impossible to miss. Each day three or more people die in Philadelphia of a drug overdose. Dozens more are estimated to experience non-fatal overdoses every day, but experts believe that the tracking of those incidents is underreported. In 2023, 79% of the 1,315 overdose deaths in Philadelphia involved fentanyl.[4]

---

[4] *See* DEA, Operation Engage – Philadelphia, https://www.dea.gov/operation-engage/philadelphia#:~:text=This%20chart%20examines%20the%20rate,prevent%20overdose%20deaths%20from%20occurring (last accessed Oct. 15, 2025).

These drugs destroy communities by tearing at the fibers of our society and keeping people living in the devastating cycle of addiction. Fentanyl is a highly addictive and powerful synthetic opioid that is 80-100 times stronger than morphine.[5] In fact, as little as 2 mg of fentanyl – the amount of a few grains of salt – can be fatal.[6] According to information provided by the DEA Philadelphia Division based on intelligence, investigations, and lab-analyzed drug seizures, in 2024, approximately 75% of fentanyl bags seized by DEA in Philadelphia contained more than a lethal dose of fentanyl. Methamphetamine is a powerful and highly addictive stimulant drug, one that is dangerous in its effects taken alone or in combination with other drugs, such as fentanyl.[7] Distribution of this drug has an immensely negative impact on the community, and this defendant has been found guilty of directly contributing to that harm.

And the impact is not limited to just Philadelphia or any particular social, political, ethnic, or economic group. The impact of fentanyl and methamphetamine does not discriminate; it affects every single county in this district and has the potential to destroy any family.

The defendant had a direct role in contributing to this state of devastation and destruction. His conviction makes clear that he is responsible for distributing thousands of grams of both

---

[5] *See* DEA, Factsheets – Fentanyl, https://www.dea.gov/factsheets/fentanyl (last accessed Oct. 15, 2025).

[6] *See* National Institute on Drug Abuse, Fentanyl, https://nida.nih.gov/research-topics/fentanyl#addictive (last accessed Oct. 15, 2025).

[7] *See* National Institute on Drug Abuse, Methamphetamine, https://nida.nih.gov/research-topics/methamphetamine (last accessed Aug. 26, 2025)

drugs into the community. These are significant amounts of deadly drugs. The weight of fentanyl distributed by this defendant and this organization is equivalent to tens of thousands of individual packets of fentanyl,[8] each individual dose capable of instantly killing the consumer regardless of the person's history or level of addiction.

Moreover, the defendant, whose role was neither casual nor minimal, profited from the addiction and harm caused by his product. The fentanyl distributed and possessed with intent to distribute by the defendant had an estimated street value of tens of thousands of dollars.

This is not the defendant's first encounter with the criminal justice system, in fact, far from it. The defendant's involvement in criminal activity began when he was 20 years old, over 30 years ago. Every few years the defendant was arrested and convicted of a new crime, often for possession with intent to distribute ("PWID"). While some of these convictions are based upon minimal drug quantities, he does stand convicted of multiple PWID offenses, with at least one, in 2000, involving bulk quantities of heroin. The defendant was afforded significant breaks, often receiving probation or county jail sentences, or shorter state prison sentences. Yet he never learned – he squandered those chances, repeatedly violating probation and parole and continuing to engage in new criminal activity. All of that being said, it appears the longest prison sentence the defendant has completed is approximately 3.5 years, on the case docketed at 51-CR-0012056-2012, a fact this Court can take into consideration in varying downward from the

---

[8] A kilogram of fentanyl is capable of producing approximately 35,000 bags of fentanyl.

guidelines to the recommended C-Plea range.

All things considered, the Government submits that a sentence of 216 months' imprisonment, which is ***144 months below*** the defendant's guideline range, would appropriately reflect the circumstances and nature of the defendant's offense as well as his criminal history and characteristics, while still taking into account his acceptance of responsibility.

**B.      The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.**

As stated above, the defendant was involved in committing very serious offenses. Methamphetamine and fentanyl are dangerous and highly addictive drugs, and the defendant was trafficking in large amounts. The Court should embrace the need to protect the public from the defendant so that he can no longer distribute drugs through the streets of Philadelphia and Montgomery County.

Thus, the requested sentence of 216 months of imprisonment is a sentence that reflects the seriousness of the crimes the defendant has committed and promotes respect for the law.

**C.      The need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant.**

The sentence the Court imposes should provide both specific and general deterrence to criminal conduct. The defendant's actions in this case, in light of his criminal history, warrant a lengthy sentence to prevent him from committing further crimes. Moreover, the case itself is a proper vehicle to demonstrate a need to deter the public from committing these types of crimes. The Court is presented with an opportunity to demonstrate to the community that trafficking

14

methamphetamine and fentanyl, will result in a long prison sentence. The defendant's conduct speaks for itself – it was serious and harmful to society and should be punished accordingly.

> **D.    The need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner.**

There is no known need in this case to adjust the sentence in order "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . ." § 3553(a)(2)(D). A long sentence will afford him ample opportunity to further his training, education, care or treatment, should he desire to, through the various educational opportunities provided to inmates within the Bureau of Prisons.

> **E.    The guidelines and policy statements issued by the Sentencing Commission and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.**

The government is not aware of any policy statements that are of particular concern in this case. Imposition of the requested sentence in this case, rooted in statutorily required and nationally applicable mandates, will ensure uniformity among similar defendants who have been found guilty of similar conduct.

Here, a significant sentence of 216 months (18 years) is below the bottom of the applicable guideline range, but still weighty. It is also commensurate for this defendant's relative culpability compared to his co-defendant, Alberto Cintron, who received a sentence of 234 months (19.5 years). This sentence would serve to deter the defendant and promote general deterrence; it would also incapacitate him for a lengthy period to prevent him from committing future crimes and provide him with an opportunity to seek treatment or vocational skills if he

15

chooses. This sentence is sufficient but not greater than necessary to meet the goals of sentencing.

## IV.   CONCLUSION

The requested sentence is sufficient but not greater than necessary. The government recommends the Court impose a sentence of 216 months' imprisonment to be followed by 10 years of supervised release. This sentence will serve all of the purposes of sentencing and all of the factors set forth in § 3553(a).

Respectfully submitted,

DAVID METCALF
United States Attorney


*/s/ Lindsey T. Mills*
LINDSEY T. MILLS
Assistant United States Attorney

<u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the Government's Sentencing Memorandum has been served via ECF and electronic mail upon:

Timothy Tarpey, Esq.

*/s/ Lindsey T. Mills*
LINDSEY T. MILLS
Assistant United States Attorney

Date: May 13, 2026